IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IOAN SAS,<br>Individually and on behalf of a class, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Honorable John J. Tharp, Jr. |
| vs. | )<br>) | Case No. 18-cv-01949 |
| RESURGENCE LEGAL GROUP, PC,<br>INVESTINET, LLC, PALISADES<br>COLLECTION, LLC and ASTA<br>FUNDING, INC., | )<br>)<br>)<br>)<br>) | Related to Case No. 18-cv-8278 |
| Defendants. | )<br>) | |
| NAVID MAJEDI,<br>Individually and on behalf of a class, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Honorable John J. Tharp Jr. |
| vs. | )<br>) | Case No. 18-cv-8278 |
| RESURGENCE LEGAL GROUP, PC,<br>RESURGENT CAPITAL SERVICES<br>LP and CACH, LLC, | )<br>)<br>)<br>) | Related to Case No. 18-cv-1949 |
| Defendants. | )<br>)<br>) | |

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1) FOR LACK OF STANDING
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Resurgence Legal Group, PC ("Resurgence"), InvestiNet, LLC, Palisades Collection, LLC ("Palisades"), Asta Funding, Inc., Resurgent Capital Services LP, and CACH, LLC ("CACH") (collectively, the "Defendants"), move to dismiss the First Amended Complaint— Class Action (Case No. 18-cv-1949 (ECF No. 68); Case No. 18-cv-8278 (ECF No. 27) – each referred to as the "Complaint"), for lack of subject matter jurisdiction pursuant to Rule 12(b)(1),

63910.7

FED. R. CIV. P. Plaintiffs Ioan Sas and Navid Majedi (each a "Plaintiff") fail to plausibly allege any concrete and particularized injury. Therefore, Plaintiffs lack Article III standing to bring these actions.[1]

In support of this motion, Defendants state as follows:

### INTRODUCTION

In these single-count putative class actions, Plaintiffs allege a claimed violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Each Plaintiff alleges he received a single collection letter that included false and misleading statements. Plaintiff complains that the letter referred to the debt as an "account" instead of a "judgment" and failed to disclose that interest was accruing. *See* Compl. ¶¶ 66, 68 (*M. Compl.* ¶¶ *59, 61*).

As a threshold and dispositive matter, each Plaintiff lacks Article III standing to raise these claims, depriving the Court of subject matter jurisdiction. Each Plaintiff lacks standing because he "fails to allege that he *himself* suffered a concrete and particularized injury" arising from the receipt of the letter. *See Zuniga v. Asset Recovery Solutions*, No. 17-cv-05119, 2018 WL 1519162, at *2 (N.D. Ill. Mar. 28, 2018) (Chang, J.) (hereinafter, "*Zuniga*") (emphasis in original) (applying *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) to dismiss FDCPA putative class action for lack of Article III standing); *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 889 (7th Cir.

---

[1] As directed by this Court during the April 10, 2019, status conference, Defendants file this single Motion to Dismiss in both cases with the caption of both lawsuits, as it applies equally to each lawsuit. Although the Complaints are slightly different, with varying dates, party names, debt amounts, and paragraph citation references, the critical allegations for purposes of this Motion are functionally identical. While this Motion will quote and cite to the Complaint filed by Plaintiff Sas, Defendants will include paragraph citations to Majedi's pleading as "*M. Compl.* ¶ __" and note name differences in italics for ease of reference and explain any factual differences in footnotes.

2017) (hereinafter, "*Groshek*") (no subject matter jurisdiction where the plaintiff failed to "allege[] facts demonstrating a real, concrete appreciable risk of harm").

Indeed, Plaintiffs' own allegations, and the letters attached to their respective Complaints, refute any plausible risk of confusion or harm, which is necessary to establish Article III standing. Plaintiffs first assert they were "confused by the [l]etter['s]" allegedly false reference to his debt as an "account." *See id*., at ¶ 44 (*M. Compl*. ¶ 53). They claim no account exists because their respective debts are instead each a "judgment" obtained on the underlying debts. *See id*., at ¶¶ 28-29, 38 (*M. Compl*. ¶¶ 17-18, 28-30, 53). Yet, the letters at issue clearly identify the debts by reference to the "Original Creditor," and provide the existing "Account Number" and the "Current Creditor". *See id*., at ¶¶ 28-29, 38. Exh. A.[2] They further specifically use the word judgment in Paragraph 4, explaining that copies of the judgment will be provided upon request:

> If you notify us, in writing, within 30 days after receipt of this notice, that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you, and a copy of such verification or judgment will be mailed to you.

Exh. A. The judgments are long since final, and neither Plaintiff denies having been served in the underlying state court action.

Each Plaintiff's own allegations leave no room for confusion as to what the debt is that is referenced in their respective letters. Moreover, Plaintiffs concede the letters' sender

---

[2] Plaintiff Majedi's allegations on this issue are slightly different, but not in a material way. He alleges that "the Letter and State Action Complaint contain conflicting information as to the identity of the original creditor." *M. Compl. ¶ 40*. A closer look at Exhibits A (the letter) and B (state court Complaint), however, shows that both identify Metris, contrary to Plaintiff Majedi's assertion. Paragraph 3 of the file-stamped state court Complaint identifies "METRIS … account number 5458001656936568." The letter also identifies METRIS as the "Original Creditor" with account ending 6568." While Majedi also attaches an Affidavit of Claim that identifies "HSBC CARD SERVICES (III), INC." it is unclear if that was filed with the Complaint or at all.

3

63910.7

(Resurgence)[3] promptly provided an additional explanation of the debt's origin upon request. *See id.*, at ¶ 49.[4] The face of the Complaint, therefore, precludes a finding of any risk of confusion about the origin of the debt at issue.

As to the future accruing interest, Plaintiffs similarly admit this information was promptly provided by Resurgence. *See id.*, at ¶ 49. Plaintiffs are further aware that the FDCPA does not require that future interest be disclosed in a dunning letter, but only requires an accurate disclosure of the total amount due on the date of the letter, which occurred here. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F. 3d 872, 875-76 (7th Cir. 2000) (cited by Plaintiff in Compl. ¶ 57 *(M. Compl. ¶ 47)*); *see also Aker v Americollect, Inc.*, 854 F.3d 397, 399 (7th Cir. 2017) (noting that "§ 1692g(a)(1) is satisfied by demanding a specific amount" for payment that includes interested added to the principal, "rather than leaving the debtors to guess how much they owed."); *see also* Compl. Exh. A. *(M. Compl. Exh. A)*. Plaintiffs fail to allege that the letters' omission of future interest confused or misled them, induced them to take action, or in any way impacted their response to their respective debts. Instead, Plaintiffs merely parrot the "unsophisticated consumer" liability standard applied to FDCPA claims in general by alleging hypothetically that an unsophisticated consumer "could" be induced to pay the debt if the consumer did not know about accruing interest. *See id.*, at ¶ 59 *(M. Compl. ¶ 51)*. Plaintiffs fail to make an allegation (nor could they truthfully do so) that a payment of the amount stated in the

---

[3] Resurgence is the party that sent the subject letter in both lawsuits. Plaintiff sues the other defendants based on conclusory allegations of vicarious liability. *See* Compl. ¶¶ 61-63 *(M. Compl. ¶¶ 55-56)*. Defendants dispute this theory of liability and will address it further should any part of these lawsuits proceed.

[4] Unlike Plaintiff Sas' Complaint, which details attorney Kasalo's phone call with Resurgence, Plaintiff Majedi's Complaint (also filed by attorney Kasalo) omits these allegations. Plaintiff Majedi does plead that attorney Kasalo was tasked with helping to identify the debt. M. Compl. ¶ 26, and the remainder of the allegations make it clear that attorney Kasalo confirmed the original creditor and learned about the future interest.

letters would not have been accepted by Resurgence, on behalf of its clients, as satisfaction of the debt. They do not allege that they attempted (or that anyone else attempted) to pay the amount stated in one of the letters at issue and that the payment was refused. Their Complaints' allegations of hypothetical and vaguely-pled risk to others does not satisfy Plaintiffs' burden to demonstrate their own standing.

Having failed to plead plausibly any concrete and particularized injury, Plaintiffs lack Article III standing, and the Complaint should be dismissed for lack of subject matter jurisdiction.

## ARGUMENT

### I. Plaintiff Must Demonstrate His Standing as a Threshold Matter of the Court's Subject Matter Jurisdiction

A Rule 12 (b)(1) motion tests whether the Court has subject matter jurisdiction and should be addressed as a threshold matter. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Article III of the United States Constitution limits the jurisdiction of federal courts "to actual 'Cases' and 'Controversies' brought by litigants who demonstrate" the "'[i]rreducible constitutional minimum of standing' consist[ing] of three elements: injury in fact, causation, and redressability." *Groshek*, 865 F.3d at 886 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each Plaintiff "bears the burden of establishing" his standing by "plead[ing] sufficient factual allegations[] that 'plausibly suggest' each of these elements." *Id.* (*citing Silha v. ACT, Inc.*, 807 F. 3d 169, 174 (7th Cir. 2015)). If, at any time, the court determines that it lacks subject matter jurisdiction, either on the motion of a party or of its own accord, the court must dismiss the action. *See Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 808 (7th Cir. 2005); *Prof'l Svc. Indus., Inc. v. Dynamic Dev. Co., LLC*, No. 14-cv-06363, 2018 WL 3389705, at *3 (N.D. Ill. July 12, 2018) (Tharp, J.) (citing Fed. R. Civ. P. 12(h)(3)).

5

63910.7

Where, as here, "subject matter jurisdiction is not evident on the face of a complaint, [a] motion to dismiss pursuant to Rule 12(b)(1) … [is] analyzed [like] any other motion to dismiss [pursuant to Rule 12(b)(6)]." *United Phosphorous, Ltd. V. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2011), *overruled on other grounds*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Thus, Plaintiffs must each allege a theory of standing that "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs' "obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do*.*" *See id.* at 555 (internal citations omitted). Only Plaintiffs' well-pled factual allegations will be accepted as true, and not "threadbare recitals of … [the] elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940-41 (2009). All of Plaintiffs' non-conclusory and well-pled allegations should be considered, including "any facts set forth in the complaint that undermine [his] claim" and "exhibits attached to the [C]omplaint." *Bogie v. Rosenberg*, 705 F. 3d 603, 609 (7h Cir. 2013). Exhibits that contradict Plaintiffs' allegations control. *See id*.

As discussed below, Plaintiffs cannot meet their burden to establish standing because their allegations fail to plausibly demonstrate that either personally suffered any concrete and particularized injury; in fact, they refute that conclusion. Therefore, the Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction.

II.     *Spokeo* and the Seventh Circuit's Applications of Its Holding Require that Plaintiffs Plausibly Allege a Concrete and Particularized Injury

*Spokeo* established that allegations of "a bare procedural violation, divorced from any concrete harm" do not automatically "satisfy the injury-in-fact requirement of Article III." 136 S. Ct. at 1549. "Not all statutory violations are enough to 'confer' Article III standing by themselves." *Zuniga*, at *2 (*citing Spokeo*, 136 S. Ct. at 1549).

6

Instead, to allege an "injury-in-fact" associated with a statutory violation a plaintiff must allege facts demonstrating harm that is "both concrete *and* particularized." *Id.*, at 1548 (emphasis in original). An injury that is "concrete" cannot be "conjectural or hypothetical" – it must be "real" and not "abstract." *Id.*, at 1548. In some circumstances, such as where the violation itself creates "the risk of real harm" to the plaintiff, "the violation of a procedural right granted by a statute" can be sufficient to satisfy this requirement. *Id.*, at 1549. To demonstrate this, the plaintiff must allege facts to "show that the statutory violation presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek*, 865 F.3d at 887 (citations and internal quotation omitted). With respect to the FDCPA, Congress intended to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Plaintiffs' quibbling over the use of the word "account" as opposed to "judgment" with regard to debts that they have been finally adjudicated to owe presents no risk of harm whatsoever.

In addition to showing that harm is concrete, a plaintiff must also allege harm that is particularized by pleading facts that demonstrate a "distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal citations omitted). The alleged "injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1; *see also Spokeo*, at 1548 (collecting cases).

The Seventh Circuit Court of Appeals has adopted *Spokeo's* requirement that a plaintiff plead facts plausibly showing a concrete and particularized "injury-in-fact." In *Groshek*, the Seventh Circuit, citing *Spokeo*, affirmed the district court's dismissal for lack of standing of a Fair Credit Reporting Act ("FCRA") claim. The plaintiff in that case claimed that certain disclosures provided by the defendant were technically non-compliant with the FCRA. *See id.*, at 886. However, the plaintiff failed to "allege[] facts demonstrating a real, concrete appreciable risk of

7

63910.7

harm" arising from the allegedly nonconforming disclosure. *See id.*, at 889. Therefore, subject matter jurisdiction was lacking and dismissal was required. *See id.*

The Seventh Circuit similarly affirmed a district court's dismissal for lack of subject matter jurisdiction in *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017). There, the plaintiff claimed harm due to the defendant's alleged retention of personal consumer data beyond the time permitted by the Cable Communications Privacy Act. *See id.*, at 910. The Court of Appeals explained that while the plaintiff "might well be able to prove a violation … he has not alleged any plausible (even if attenuated) risk of harm to himself from such a violation—any risk substantial enough to be deemed 'concrete.'" *Id.*, at 911 (*citing Spokeo*, 136 S.Ct. at 1549). Dismissal for lack of subject matter jurisdiction was therefore required to avoid litigation "based not on proof of harm but on an implausible and at worst trivial risk of harm" in general. *Id.*

In a more recent opinion analyzing the sufficiency of injury pleading in a FDCPA case, the Seventh Circuit reinforced the need for a consumer to allege plausibly a risk of real harm. *See Evans v. Portfolio Recovery Assocs., LLC*, 889 F. 3d 337, 345-46 (7th Cir. 2018). There, the court made a deliberate distinction between the sufficiency of standing allegations in cases like *Gubala* (and the Complaint that are the subject of this motion) where a plaintiff fails to plausibly allege facts articulating a concrete and particularized harm, and cases where a plaintiff "explicitly allege[s] a risk of concrete harm." *See id. Evans* involved an alleged violation of 15 U.S.C. § 1692e(8), based on the failure of the debt collector to communicate that the debt was disputed when disclosing it to credit reporting agencies. *See id.*, at 343. The plaintiffs explicitly "pointed to the risk of financial harm as result of credit reporting agencies lowering their credit score." *See id.*, at 345, 346, 349. The Seventh Circuit found this allegation sufficient and further singled out this particular violation—failure to report a disputed debt as disputed to a credit reporting

8

63910.7

agency—as a special circumstance that always presents a material risk of harm and does not require additional allegations of harm beyond the violation itself under *Spokeo*. *See id*., at 344-45 (citing *Spokeo*, 136 S.Ct. at 1549). That is because "the failure to inform a credit reporting agency that the debtor disputed his or her debt will *always* have influence on the debtor, as this information will be used to determine the debtor's credit score." *See id*., at 349. Plaintiffs in this case, however, do not explicitly point to any risk of real or material harm to themselves, and fail to allege any special category of FDCPA injury like the one alleged in *Evans*.[5] Plaintiffs actually distance themselves from allegations of harm, praying for "[a]ny actual damages incurred by Class members" but not actually alleging that they or any class member has actually been damaged. A word search of both Complaints reveals that the word damage appears only in the prayer for relief, and the words "injury" and "harm" do not appear at all. Plaintiffs allege no harm because they could not do so within the confines of FED. R. CIV. P. 11.

District Courts within the Seventh Circuit also have applied *Spokeo* to dismiss FDCPA claims for failure to allege facts that plausibly support a concrete and particularized injury. *See, e.g.*, *Zuniga*, 2018 WL 1519162, at *2 (FDCPA claim dismissed for lack of standing where plaintiff failed to allege facts showing "that he *himself* suffered a concrete and particularized injury") (emphasis in original); *Wolter v. Anselmo Lindberg Oliver, LLC,* No. 16 C 4205, 2017

---

[5] District courts within the Seventh Circuit similarly have identified specific violations of the FDCPA as special circumstances that require no allegations of harm beyond the violation itself under *Spokeo*. Without attempting to provide an exhaustive list of citations to those cases, Defendants note that they involve clear violations of material rights provided to consumers under the FDCA such as, for example: the right to receive specific disclosures or information about the consumer's rights to respond to a collection complaint or dispute or request validation of the debt, and the right to be free from unlawful attempts to collect a debt not actually owed (by adding unauthorized charges, fees or interest, failing to disclose that a debt is time-barred, or sending letters after a consumer has disputed the debt or refused to pay, etc.). Plaintiff does not allege any of these special violations.

9

WL 4417830, at *2 (N.D. Ill. Oct. 4, 2017) (Gettleman, J.) (FDCPA putative class action dismissed for lack of standing where plaintiffs failed to plausibly demonstrate actual harm or an appreciable risk of harm); *Casillas v. Madison Ave. Assocs., Inc.*, No. 1:16-cv-1774-WTL-DML, 2017 WL 6517568, at *2 (S.D. Ind. Sep. 22, 2017) (FDCPA claim dismissed for lack of concrete and particularized injury where plaintiff failed to allege that defendant's purported failure to send a validation notice "affected her in any way" and instead alleged only "a statutory violation completely removed from any concrete harm or appreciable risk of harm"); *Allgire v. HOVG, LLC*, No. 1:16-CV-981-WTL-DKL, 2017 WL 1021394, at *4 (S.D. Ind. Mar. 16, 2017) (dismissing FDCPA claim alleging an erroneous calculation of the amount due because plaintiff never took any action based on the representation and so the harm alleged was merely "conjectural" and "hypothetical" – "insufficient to establish injury in fact for standing").

In sum, to establish their standing, and this Court's subject matter jurisdiction, Plaintiffs "at minimum … must allege facts from which a concrete and particularized injury or risk of injury can be inferred." *See Zuniga*, at *2 (*citing Groshek*, 865 F.3d at 889). As explained below, Plaintiffs fail to do so, requiring dismissal of the Complaints.

### III. Plaintiffs Fail to Allege any Plausible Concrete or Individualized Harm; in Fact, Their Few Factual Allegations Disprove Those Essential Elements of Article III Standing.

Plaintiffs fail to demonstrate their standing, and therefore this Court's subject matter jurisdiction over their claims, because they fail to allege facts that plausibly demonstrate a concrete and particularized harm, or risk of real harm, to themselves. Plaintiffs base their causes of action on two purported violations of the FDCPA: (1) the allegedly misleading use of the word "account" instead of "judgment" and (2) the omission of a disclosure that interest is accruing on the current debt balance. Plaintiffs' allegations on these topics are insufficient to show plausible harm.

Plaintiffs first manufacture an argument that the use of the word "account" is misleading. They assert they were confused by the letters' purportedly false reference to their debts as an "account" when each of the debts is instead a "judgment." *See id.*, at ¶¶ 28-29, 44 (*M. Compl.* ¶¶ *17-18, 28-30, 53*). That conclusion is refuted by Plaintiff's other factual allegations, including the language of the letter itself. A plain reading of the letters, especially when considered in conjunction with Plaintiffs' other factual allegations, reveals that the use of the word "account" is not false or misleading.

Plaintiffs contend that no account exists because their debts are instead each a "judgment" obtained by Palisades (*CACH*) on a Bank One (*Metris and/or HSBC Card Services (III), Inc.*) debt. *See id.*, at ¶¶ 28-29, 38 (*M. Compl.* ¶¶ *17-18, 28-30, 53*). Yet, each of the letters specifically use the word judgment in Paragraph 4, explaining that copies of the judgment will be provided upon request:

> If you notify us, in writing, within 30 days after receipt of this notice, that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you, and a copy of such verification or judgment will be mailed to you.

Exh. A. The Sas letter also clearly identifies the debt by reference to the "Original Creditor" as "BANK ONE" and provides the existing "Account Number" of Palisades, identified as the "Current Creditor" that Plaintiff Sas admits obtained the judgment against him on his Bank One debt. *See id.*, at ¶¶ 28-29, 38. Exh. A.[6] Especially with that context, the language about which Plaintiffs complain—"[W]e have been engaged by [Palisades (*CACH LLC*)] to collect its account"—is clear on its face. Plaintiffs' own allegations show that the "account" did not "cease[] to exist" as Plaintiffs nevertheless conclude. *See* Comp. ¶ 66a (*M. Compl.* ¶ 59a). Moreover,

---

[6] *See* n. 2, *supra*.

11

Plaintiffs concede the letter's sender (Resurgence) promptly provided an additional explanation of the debt's origin upon request. *See id.*, at ¶ 49.[7] The Complaints, therefore, preclude a finding of confusion (or a real risk of confusion) about the origin of the debt at issue, or a finding that Plaintiffs were deprived of information regarding their debts.

Aside from those deficient particularized allegations, Plaintiffs also allege the word "account" "would be confusing to an unsophisticated consumer, as an account cannot be a judgment, and vice versa." *See id.*, at ¶ 40 (*M. Compl.* ¶ 30). To explain the purported confusion an unsophisticated consumer purportedly would experience, Plaintiffs offer an analysis of the terms' legally distinct meanings, complete with references to case law and Black's Law Dictionary—an analysis the average unsophisticated consumer undoubtedly would not undertake upon reading the letter. *See id.*, at ¶¶ 41, 43-45 (*M. Compl.* ¶¶ *31, 33-35*). This suggests that an erudite, sophisticated commercial attorney might be confused, but it hardly suggests that any consumer, let alone the hypothetical unsophisticated consumer, would be even minimally confused by use of the word "account." *See Russell v. Equifax A.R.S.*, 74 F. 3d 30, 34 (2d DCA 1996) (noting that "the least sophisticated consumer" is "one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer").

In any event, a hypothetical risk of confusion to others is no substitute for these Plaintiffs to demonstrate their *own* alleged confusion and Article III standing. As aptly stated by the Honorable Judge Edmond E. Chang in *Zuniga*, a similar FDCPA putative class action lawsuit involving an allegedly confusing collection letter,

> Zuniga does not "plausibly suggest[] that he was confused" by the letter or that he would have acted differently if the letter had used different words. *See* [*Groshek*, 865 F.3d at 889]. Instead, he alleges only (in a conclusory fashion) that an *unsophisticated consumer* would be confused …. Zuniga argues that is all that is needed, but that argument mixes up the *substantive* standard for liability under the

---

[7]  *See* n. 4, *supra*.

12

63910.7

> FDCPA—whether an unsophisticated consumer would be confused by a debt-collection letter—with the requirements of Article III standing. Whether the *hypothetical* unsophisticated consumer would be confused does not matter for the standing inquiry, which instead asks whether the plaintiff *in this case* has shown concrete and particularized harm. Zuniga has not, and so he lacks standing to bring this lawsuit.

*Id*., at *3 (all emphasis in original). Plaintiffs, just "[l]ike the plaintiff[s] in *Groshek* [and *Zuniga*], … did not plead 'factual allegations from which [the court] could infer harm.'" *Id.* (*citing Groshek*, 865 F.3d at 889). Therefore, Plaintiffs fail to satisfy their burden to demonstrate Article III standing.

As to the accruing interest, Plaintiffs similarly admit this information was promptly provided by Resurgence. *See id*., at ¶ 49. Although Plaintiffs complain the letter deprived them of a disclosure as to the amount of their debts pursuant to Section 1692(g)(a), because there was no statement about interest accruing in the future, *see id*., at ¶ 55 (*M. Compl*. ¶ 49), the FDCPA does not require any such disclosure. *See Miller*, 214 F. 3d at 875-76; 15 U.S.C. § 1692(g)(a)(1). All that is required is that the debt collector "state the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent." *See id.* The Complaints show, and Plaintiffs do not dispute, that the letters did just that. Therefore, Plaintiffs fail to allege that they were actually deprived of information the FDCPA specifically entitles them to receive.[8]

Moreover, even if the letters did somehow constitute a violation of Plaintiffs' right to a disclosure of their debt amounts pursuant to Section 1692g(a)—which they do not—Plaintiffs fail to allege any particular and concrete harm arising from the omission of a future interest disclosure.

---

[8] Indeed, it is important to note that the judgments in Illinois accrue interest by operation of law, not as a result of any act by the judgment creditor or any decision by a collection agency such as Resurgence. Sec. 2-1303 of the Illinois Compiled Statutes states: "Interest on judgment. Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied …" 735 ILCS 5/2-1303.

"[They] do[] not allege the amount of the debt listed at the top of the letter was incorrect[,]" that they "intended to dispute or validate [the] debt," or that they otherwise "suffered the concrete harm the disclosure requirements within section 1692g of the FDCPA are designed to protect." *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, 953-54 (S.D. Iowa 2016) (dismissing Section 1692g(a) claim for lack of Article III standing for failure to allege a concrete harm beyond a mere procedural violation). Nor do they allege facts showing that there was a risk of real confusion, that they were confused or misled by the absence of a future interest disclosure, that they were falsely induced to take action, that the letter attempted to collect more than was actually owed, or that the absence of a disclosure in any way impacted their response to their respective debts. Instead, Plaintiffs merely parrot the "unsophisticated consumer" liability standard applied to FDCPA claims in general by alleging hypothetically that an unsophisticated consumer "could" be induced to pay the debt if the consumer did not know about accruing interest. *See id.*, at ¶ 59 *(M. Compl. ¶ 51)*. This hypothetical and ***vaguely-pled risk to others*** does not satisfy Plaintiffs' burden to demonstrate a particularized harm. *See Zuniga*, at *3.

Thus, despite Plaintiffs' claims "to suffer" harm or "a risk of future harm" to consumers, Plaintiffs fail "to establish concrete injury." *See Jackson*, 207 F. Supp. 3d at 957. That is fatal to their claims because "bare procedural violations of FDCPA section[] 1692g(a)[']s" disclosure requirements "do not amount to a concrete injury" standing alone. *See id.*, at 961. Having failed to meet their burden to allege a concrete and particularized injury-in-fact, Plaintiffs lack Article III standing, and their claims should be dismissed.

## CONCLUSION

WHEREFORE, Defendants Resurgence Legal Group, PC, InvestiNet, LLC, Palisades Collection, LLC, Asta Funding, Inc., Resurgent Capital Services LP, and CACH, LLC,

respectfully request that the Court dismiss the Complaint (in both *Sas* and *Majedi*) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because Plaintiffs lacks any injury in fact and therefore cannot establish Article III standing to pursue their claims.

Dated: April 29, 2019

Respectfully submitted,

By: */s/ Dara Chevlin Tarkowski*
Dara Chevlin Tarkowski
Martin T. Tully
ACTUATE LAW, LLC
641 W. Lake Street, 5th Floor
Chicago, IL 60661
Telephone: (312) 579-3108
Facsimile: (312) 579-3131
Email: dara.tarkowski@actuatelaw.com
Email: martin.tully@actuatelaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, I electronically filed Defendants' Motion to Dismiss Pursuant to Rule 12(B)(1) For Lack of Standing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants.

*/s/ Dara Chevlin Tarkowski*
Attorney

15

63910.7